**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| ANTHONY MILLER, | ) | |
|     ID # 1362672, | ) | |
|         Petitioner, | ) | |
| vs. | ) | No. 3:07-CV-1876-G (BH) |
| | ) | |
| NATHANIEL QUARTERMAN, Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
|         Respondent. | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court, this case has been referred to the United States Magistrate Judge for findings, conclusions, and recommendation.

**I. BACKGROUND**

**A. Nature of the Case**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge April 11, 2006, convictions for murder, aggravated robbery, and evading arrest in Cause Nos. F05-55658-H, F05-555628-H, and F05-555714-H. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**B. Procedural and Factual History**

In August of 2005, the State indicted petitioner for murder, evading arrest, and aggravated robbery. (State Habeas Transcript[WR-68,639-01]:93; S.H.Tr.[WR-68,639-02]:93;S.H.Tr.[WR-68,639-03]:93).[1] In each of the indictments, it also alleged that petitioner had previously been

---

[1] Other than the different indictments and judgments, the three state habeas transcripts are identical with identical paging. Together, they will be referred to as "S.H.Tr."

convicted of two felony offenses. *Id*. Petitioner pled guilty to the charged offenses on April 11, 2006; pursuant to a plea agreement, he was sentenced to fifty years for murder and aggravated robbery and to twenty years for evading arrest. (R. 1:6, 8-10).

Petitioner did not appeal his convictions. On May 2, 2005, he filed state applications for writ of habeas corpus in which he raised, in essence, the same issues in his federal petition (S.H.Tr.:7). On October 31, 2007, the Court of Criminal Appeals denied petitioner's state applications without written order on the findings of the trial court without an evidentiary hearing. *Id*. at cover.

On November 5, 2007, petitioner filed his petition for federal habeas relief. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system). Petitioner also filed a memorandum in support of his petition on January 7, 2008. Respondent filed an answer on April 2, 2008, asserting that petitioner's federal petition is time-barred, partially unexhausted, and without merit, (*see* Answer) and provided the state court records.

**C.  Substantive Issues**

Petitioner asserts that (1) his attorney provided ineffective assistance of counsel; (2) the trial court erred by advising him incorrectly regarding the benefits of pleading guilty; and (3) his guilty pleas were not voluntarily or intelligently made. (Pet. at 7).

**D.  Exhaustion**

Respondent contends that petitioner has failed to exhaust a portion of his ineffective assistance of counsel ground for relief at the state level.

## II.  STATUTE OF LIMITATIONS

Respondent contends that petitioner's federal petition was not timely filed under applicable

federal law and should be dismissed with prejudice as time-barred.

**A. <u>Antiterrorism and Effective Death Penalty Act of 1996</u>**

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of the Act substantially changed the way federal courts handle habeas corpus actions. One of the major changes is a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The one-year period is calculated from the latest of either (A) the date on which the judgment of conviction became final; (B) the date on which an impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the Supreme Court initially recognizes a new constitutional right and makes the right retroactively applicable to cases on collateral review; or (D) the date on which the facts supporting the claim became known or could have become known through the exercise of due diligence. *See id.* § 2244(d)(1)(A)-(D).

Petitioner has alleged no state-created impediment under subparagraph (B) that prevented him from filing his federal petition. Nor does he base his petition on any new constitutional right under subparagraph (C). Based on § 2244(d)(1), the one-year statute of limitations is therefore calculated from the latest of (A) the date petitioner's conviction became final or (D) the date on which he knew or should have known with the exercise of due diligence the facts supporting his claims.

Because petitioner did not appeal his convictions, for purposes of § 2244(d)(1)(A), his

3

judgments of conviction became final thirty days after he pled guilty, was sentenced, and failed to appeal. *See Scott v. Johnson*, 227 F.3d 260, 262 (5th Cir. 2000) (noting that a conviction becomes final under Texas law thirty days after the defendant pled guilty and failed to file an appeal). Respondent contends that this Court should consider petitioner's convictions final on the day he pled guilty because by pleading guilty, he waived his right to file a direct appeal and should not receive the benefit of the additional thirty-day period in which to file a direct appeal. Respondent fails to address the Fifth Circuit's opinion in *Scott*, however, which directly states that under 2244(d)(1)(A), Scott's conviction became final thirty days after he *pled guilty*. Based on this binding Fifth Circuit precedent, petitioner's convictions became final on May 11, 2006, thirty days after he pled guilty to the charged offenses.

With regard to subparagraph (D), the Court determines that the facts supporting the claims raised in the petition also became known or could have become known prior to the date petitioner's state judgment of conviction became final on May 11, 2006. At trial, petitioner would have known, or should have known through the exercise of due diligence, the factual predicate of his claims. Because he filed his petition more than one year after his conviction became final, a literal application of § 2244(d)(1) renders his November 5, 2007, filing untimely.

**B. Tolling**

Respondent contends that petitioner is not entitled to any tolling under this statute because petitioner's state application was filed within one year after his convictions became final.

Section 2244 mandates that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be counted toward any period of limitation under this subsection*." 28 U.S.C. § 2244(d)(2)

4

(emphasis added). As noted earlier, petitioner's convictions became final on May 11, 2006. Petitioner filed state habeas applications in each of his three cases on May 2, 2007, prior to the one-year time period expiring. Accordingly, these state applications did toll the limitations period. When the Court of Criminal Appeals denied the applications on October 31, 2007, petitioner had nine days in which to file a timely federal petition. Because he filed his petition on November 5, 2007, five days later, it is timely.

### III. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writs constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89

(Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed

6

unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV.  VOLUNTARINESS OF PLEA

In his third ground for relief, petitioner asserts that his guilty pleas were involuntary. Specifically, he asserts that 1) he did not intend to kill the victim but did so in self-defense during a domestic dispute after she attacked him with a knife and he "lost control;" 2) he was induced to plead guilty because he was told that he would receive maximum stacked sentences if he did not; 3) he was never read the enhancement paragraphs contained in the three indictments and did not understand that he was pleading true to the prior convictions; 4) he never entered pleas of guilty or pleas of true because his attorney entered them for him; and 5) the trial court never asked him if he had been induced or coerced into accepting the State's plea offer.   (Pet. at 7).

A plea of guilty waives a number of constitutional rights.  *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988).   Therefore, the Fourteenth Amendment Due Process Clause imposes certain requirements to ensure the validity of a guilty plea. *Fischer v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978) (citing *Brady v. United States*, 397 U.S. 742 (1970); *Boykin*, 395 U.S. 238; *Johnson v. Zerbst*, 304 U.S. 458 (1938)).  "*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made."  *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000).  In addition, "the voluntary and intelligent nature of the plea [must] be apparent on the face of the record."  *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988).

A plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'"

7

*Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady*, 397 U.S. at 748). "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Id.* (quoting *Brady*, 397 U.S. at 749). Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *See Daniel v. Cockrell*, 283 F.3d 697, 702-03 (5th Cir.), *cert. denied*, 537 U.S. 874 (2002); *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "Before the trial court may accept a guilty plea, the court must ensure that the defendant 'has a full understanding of what the plea connotes and of its consequence.'" *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991) (quoting *Boykin*, 395 U.S. at 244). "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

A prisoner may generally not "collaterally attack a voluntary and intelligent" plea. *Taylor*, 933 F.2d at 329. A guilty plea "entered by one fully aware of the direct consequences . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *See Brady*, 397 U.S. at 755. "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty

8

plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981) (per curiam).

At the state habeas level, the trial court found that petitioner had signed judicial confessions in all three cases admitting each of the charged offenses as well as the enhancement paragraphs. The state habeas court further found that in the plea agreements signed by petitioner, he was admonished about the sentence ranges for each offense, he pled true to the enhancement paragraphs and guilty to the charged offenses, and he was admonished about the consequences of his guilty pleas and pleas of true. (S.H.Tr.:59-60). The state habeas court also found that at the plea hearing, the trial judge again explained each charge to petitioner, the punishment ranges for each offense, and the consequences of pleading guilty. Upon questioning by the trial court, petitioner affirmatively stated that he was pleading guilty freely and voluntarily. The state habeas court found that petitioner stated that he understood all of the rights he waived when he signed the plea papers and understood that he could not appeal the convictions, and the trial court informed petitioner that the sentences could not be stacked. (S.H.Tr.:60). The state habeas court then concluded that petitioner's guilty pleas were free and voluntary and that he was not erroneously advised regarding the law concerning stacked sentences. (S.H.Tr.:61). The Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus on the findings of the trial court. *Id.* at cover. The trial court's factual findings are not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, and the conclusions are not contrary to federal law.

When petitioner pled guilty before the trial court in these cases, he stated on the record that he was pleading guilty freely and voluntarily, that he was pleading true to the enhancement paragraphs contained in the indictments, that he understood all of the rights he was waiving

9

including the right to appeal, that he understood what he was charged with and the ranges of punishment he was facing, and that he understood that he would not be eligible for parole until he had served twenty-five years. (R. 1:5-8). After the trial judge asked petitioner if he still wished to enter pleas of guilty and true in these cases, petitioner answered "yes." (R. 1:8). His judicial confessions and plea of true to the enhancement paragraph were admitted into evidence. (R. 1:8).

Petitioner contends that his plea was involuntary because he was never read the enhancement paragraphs and did not know that he was pleading true to prior convictions, because he never personally entered his guilty pleas and pleas of true, and because the trial court never asked him if he had been induced or coerced into accepting the plea offer. Contrary to petitioner's assertions, however, he signed judicial confessions which listed both the charged offenses and the enhancement paragraphs, thereby indicating that he knew he was pleading true to prior felony offenses. (S.H.Tr.:64-71). Moreover, petitioner stated on the record at the plea hearing that he was pleading guilty to the charged offenses and true to the enhancement paragraphs. (R. 1:6, 8). Finally, the trial court asked petitioner during the hearing if he was entering his pleas freely and voluntarily, and petitioner answered that he was, and the plea agreements themselves state, immediately above petitioner's signature, that his pleas of guilty and waivers of rights were knowingly, freely, and voluntarily made. (R. 1:6; S.H.Tr.:73-80). The record does not support petitioner's assertions that he was not aware of the prior convictions to which he pled true, that he did not personally enter his pleas, or that his pleas were involuntary because the trial court did not specifically inquire whether he was induced or coerced into pleading guilty.

With regard to petitioner's assertion that his guilty plea to murder was involuntary because he did not intend to kill the victim, petitioner's statement that he "lost control" during a domestic

10

dispute is not evidence that he is not guilty of murder. Moreover, petitioner signed a judicial confession in which states that he was guilty of murder exactly as alleged in the indictment. (S.H.Tr.:65). Petitioner has not overcome the presumption of regularity and "great weight" accorded state-court records. *See Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that state-court records are accorded "great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that state-court records are entitled to a "presumption of regularity"). Finally, with regard to petitioner's assertion that his guilty pleas were involuntary because he was persuaded that he would receive stacked maximum stacked sentences if he did not, the trial court advised petitioner that the sentences could not be stacked because he was pleading guilty, and petitioner acknowledged that this had been explained to him. (R. 1:6-7). This was a correct statement of Texas law, which states that sentences may not be stacked if they arise out of the same criminal episode prosecuted in a single criminal action. *See* TEX. PENAL CODE ANN. § 3.03(a) (West 2006). Therefore, even assuming that the three offenses are considered as part of the same criminal episode, had petitioner's three cases been prosecuted separately, his sentences could have been stacked. Petitioner's guilty pleas prevented this from occurring. Moreover, as noted by respondent, guilty pleas are not rendered involuntary because a defendant pleads guilty out of a desire to limit the possible penalty after being advised by competent counsel that a plea would be to the defendant's advantage. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

      The record before this Court is that petitioner was admonished by the trial court about the consequences of the plea agreements, the sentence ranges, and the parole implications. Petitioner made knowing and voluntary pleas of guilty. Accordingly, petitioner's claim entitles him to no habeas relief.

11

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL AND TRIAL ERROR

In his first ground for relief, petitioner asserts that he received ineffective assistance of counsel at trial because: 1) counsel erroneously advised him that, by pleading guilty, petitioner avoided stacked sentences; 2) advising him to plead guilty after petitioner informed counsel that his girlfriend's death was "the result of a domestic dispute that stemmed from passion" after she attacked him and he defended himself; and 3) failing to interview petitioner's mother, who was a witness to his girlfriend's death and the aggravated robbery of petitioner's mother's car. (Mem. at 7). In his second ground, petitioner contends that the trial court erred when it advised him incorrectly regarding the law concerning stacked sentences.[2]

Guilty pleas are "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-771 (1970)). With respect to guilty pleas, "[c]ounsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution." *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972). However, once a criminal defendant enters a knowing,

---

[2] Respondent asserts that petitioner has failed to exhaust his claim that his attorney never interviewed his mother and that this claim is procedurally barred. Because it appears that petitioner is entitled to no habeas relief on this claim, the Court bypasses the procedural issue and proceeds to the merits of the claim. *See* 28 U.S.C. § 2254(b)(2) (providing that the Court may deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"); *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation which recognizes that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).

intelligent, and voluntary guilty plea, all non-jurisdictional defects in the proceedings below are waived except for claims of ineffective assistance of counsel relating to the voluntariness of the plea. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

To successfully state a claim of ineffective assistance of counsel under existing precedent of the United States Supreme Court, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies when a petitioner alleges he was denied effective assistance of counsel in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). "[I]n a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

With regard to petitioner's assertion that his counsel was ineffective for advising him to plead guilty after petitioner told him that he did not intent to kill the victim, petitioner has not shown

13

that this advise was deficient as to render his guilty pleas involuntary. First, petitioner's assertions regarding the death of his girlfriend have no relevance to his guilty pleas to the aggravated robbery or the evading arrest charges. Second, while petitioner asserts that he killed his girlfriend in "self-defense," he also states in his federal petition that the crime occurred due to a "level of sudden passion, panic and mental instability and shock," and that he "lost control with the sudden emotion and overwhelming fear and anger." (Pet. at 7). Petitioner also acknowledges that he plead guilty because he feared receiving maximum sentences based on his criminal history, which included at least three prior felony offenses. Given petitioner's own rendition of events, coupled with his criminal history, petitioner has not shown that counsel was ineffective for advising him to plead guilty to all three offenses.

As for petitioner's assertion that his trial counsel was ineffective for failing to speak to his mother, petitioner submitted an unsigned affidavit purportedly from his mother, Mamie Collins, with his state habeas applications. This affidavit states that Ms. Collins did speak to petitioner's attorney and that the attorney persuaded her to convince petitioner to plead guilty so that he would not receive stacked sentences. (S.H.Tr.:25). Moreover, petitioner has not shown how any failure to interview petitioner's mother was ineffective assistance of counsel that rendered petitioner's guilty plea an involuntary one. Petitioner judicially confessed to robbing his mother by using and exhibiting a knife, and taking her car and money. (S.H.Tr.:67). By petitioner's own admission, he did this immediately after he killed his girlfriend and was running from their residence, and he used his mother's car to flee the scene. (Mem. at 2-3). While Ms. Collins was a witness to the aggravated robbery of which she was the victim, petitioner has neither alleged nor shown what information counsel would have received from her. Instead, the unsigned affidavit states that she encouraged

her son to plead guilty so that he would not receive stacked sentences. Petitioner's trial counsel was not ineffective in this regard.

Finally, petitioner contends that his trial counsel was ineffective when he advised him that by pleading guilty, he avoided the possibility of stacked sentences. He also contends that the trial judge erred when she stated on the record that one of the benefits of petitioner's guilty pleas was that he avoided stacked sentences. As noted earlier, however, this is a correct statement of Texas state law. While petitioner argues that his sentences could not be stacked because they all arose out of the same criminal episode, even assuming this is correct, the State could have sought to have all three sentences stacked by trying petitioner in three separate trials, and the trial judge would have had the discretion to do so. *See* TEX. PENAL CODE ANN. § 3.03(a) (West 2006).[3] Trial counsel was not ineffective for informing petitioner correctly regarding state law, and the trial court did not err in doing the same. The state court denied relief on its merits. (S.H.Tr.:cover). This denial is not contrary to federal law. For the above-stated reasons, petitioner's claims of ineffective assistance of counsel and trial error entitle him to no habeas relief.

## VI. STATE CONSIDERATION OF CLAIMS

Petitioner raised his claims in his state writs. The Court of Criminal Appeals denied the state writs on the findings of the trial court, and thus petitioner's claims were adjudicated on the merits. These decisions at the state level are consistent with applicable Supreme Court precedent. The decisions involved no unreasonable application of Supreme Court precedent. The adjudication of

---

[3] At the state habeas level, the state habeas court found that the trial judge had given petitioner "the benefit of the doubt" that his three offenses arose out of the same criminal episode, as petitioner evaded arrest by the police two days after the murder and aggravated robbery. Whether offenses are part of the same criminal episode depends on whether they are connected, constitute a common scheme or plan, or were the repeated commission of the same or similar offenses. (S.H.Tr.:61). *See also Craig v. State*, 594 S.W.2d 91, 94-5 (Tex. Crim. App. 1980).

the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on his claims.

## VII. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief pursuant to 28 U.S.C. § 2254.

SIGNED on this 8th day of April, 2009.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE